**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Gary Wellever,

           Plaintiff,

v.

Charles L Ryan, et al.,

           Defendants.

No. CV-15-00634-PHX-JAT (JZB)

**ORDER**

Plaintiff Gary Wellever, a state prisoner proceeding pro se, brought this civil rights action seeking relief under 42 U.S.C. § 1983. Plaintiff alleges that Defendants Charles Ryan, Amber Norton, and Lauren Glassey were deliberately indifferent to his serious medical need in violation of the Eighth Amendment, and Defendants Ryan and Glassey denied Plaintiff humane conditions of confinement in violation of the Eighth Amendment. (Doc. 11 at 5, 7, 9).

Pending before the Court are Defendants Norton and Glassey's Motion for Summary Judgment, (Doc. 32), Defendant Ryan's Motion for Summary Judgment and Joinder in Codefendant Norton/Glassey's Motion for Summary Judgment, (Doc. 37), and Plaintiff's Motion for Request to Defendants Norton, Glassey, [and] Ryan['s] Response Dated August 18, 2016, and Ryan's Dated August 22, 2016 to Plaintiff's Response Dated August 9, 2016, (Doc. 63). The parties did not request oral argument. The Court now rules on the Motions.

///

# I.     BACKGROUND

At the time he filed this action, Plaintiff was an inmate confined in the Central Arizona Correctional Facility ("CACF"), a private correctional facility. (Plaintiff's Statement of Facts in Opposition, Doc. 54 ("PSOF") at ¶ 1). The GEO Group owns and operates CACF and has contracted with the State of Arizona to incarcerate prisoners. (Statement of Facts in Support of Defendant Ryan's Motion for Summary Judgment, Doc. 38 ("DRSOF") at ¶ 4; PSOF at ¶ 1).

On November 20, 2013, Plaintiff first sought and received medical aid for a rash "affecting his legs, arms, and abdominal areas" and "characterized by a burning sensation and incessant itching." (PSOF at ¶ 4; Doc. 54 at 16). CACF medical staff placed Plaintiff in isolation and prescribed Ivermectin, Benadryl, Prednisone, and Bactrim for his scabies parasite infection.[1] (Defendants Norton and Glassey's Statement of Facts in Support of Motion for Summary Judgment, Doc. 33 ("DNGSOF") at ¶ 13; PSOF at ¶ 6).

Sometime prior to December 8, 2013, Plaintiff's rash reappeared, and CACF medical staff provided additional treatment and prescribed Bactrim, Prednisone, and Benadryl to Plaintiff. (DNGSOF at ¶ 13; PSOF at ¶ 7). Overall, between December 8, 2013 and March 24, 2014, CACF medical staff examined and treated Plaintiff 11 times for issues relating to Plaintiff's skin condition. (DNGSOF at ¶ 13). Nurse Practitioner Glassey treated Plaintiff during one of these appointments on January 26, 2014. (*Id.* at ¶ 15). During this appointment, Defendant Glassey prescribed Triamcinolone cream and Tolnaftate cream after examining Plaintiff's skin rash. (*Id.* at ¶¶ 16, 17). Following this appointment, Plaintiff submitted at least one inmate grievance, which Defendant Norton responded to as part of her duties as Correctional Healthcare Company's ("CHC's") Health Services Administrator for CACF. (*Id.* at ¶¶ 2, 12–14). In this grievance, dated March 17, 2014, Plaintiff sought an examination by a dermatologist.

---

[1] Scabies is a skin condition caused by a contagious infestation of the skin by the itch mite. *See* Centers for Disease Control, *Scabies Frequently Asked Questions (FAQs)*, (Nov. 2, 2010), http://www.cdc.gov/parasites/scabies/gen_info/faqs.html. "The most common symptoms of scabies are intense itching and a pimple-like skin rash." *Id.*

(Doc. 33-3 at 4–5). In conducting her review of Plaintiff's grievance, Defendant Norton found that his "complaints [were] addressed in a timely manner and all treatments [were] appropriate." (DNGSOF at ¶ 14).

On June 30, 2014, one of Plaintiff's treating CACF physicians referred Plaintiff to see an offsite dermatologist. (PSOF at ¶¶ 9, 10; Doc. 54 at 18). Plaintiff's dermatologist appointment took place over five months later on December 16, 2014. (PSOF at ¶ 10; Doc. 54 at 30–33). At the appointment, a complete skin examination revealed Plaintiff's continuing or recurring scabies infestation. (PSOF at ¶¶ 15–16). The dermatologist prescribed Permethrin, Triamcinolone, Doxepin, and Ivermectin to Plaintiff. (Doc. 54 at 31). Plaintiff described this treatment as "effective." (Doc. 53 at 12).

## II.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of materials in the record," including depositions, affidavits, interrogatory answers or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must

do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

At the summary judgment stage, the trial judge's function is to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Liberty Lobby, Inc.*, 477 U.S. at 249–50. If the evidence is merely colorable or is not significantly probative, the judge may grant summary judgment. *Id.*

## III.   ANALYSIS

Plaintiff alleges that Defendants Ryan, Norton, and Glassey violated his rights under the Eighth Amendment.[2] (*See* Doc. 11 at 5, 7, 9). By seeking a remedy for violations of constitutional rights, Plaintiff alleges a violation of 42 U.S.C. § 1983. A plaintiff asserting a claim for relief under § 1983 must prove that: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a constitutional right." *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992). State officials or municipalities are liable for

---

[2] Plaintiff bases his claims against Defendant Ryan on the Fourteenth Amendment's Due Process Clause, while he bases his claims against Defendants Norton and Glassey on the Eighth Amendment's Cruel and Unusual Punishments Clause. (*See* Doc. 11 at 5, 7, 9). Because Plaintiff's underlying factual allegations against all Defendants are similar, the Court will analyze all of Plaintiff's claims under the Eighth Amendment. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("Because this case involves prison inmates rather than pretrial detainees or persons enjoying unrestricted liberty[,] . . . the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause.").

deprivations of life, liberty, or property that rise to the level of a "constitutional tort" under the Due Process Clause of the Fourteenth Amendment. *Johnson v. City of Seattle*, 474 F.3d 634, 638 (9th Cir. 2007).

Here, Defendants do not dispute that they acted under the color of law. At issue then is whether Defendants' actions deprived Plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

### A.     Eighth Amendment Inadequate Medical Care

Plaintiff alleges that Defendants Ryan, Norton, and Glassey violated his Eighth Amendment right to adequate medical care. (Doc. 11 at 5, 7, 9). "Denial of medical attention to prisoners constitutes an Eighth Amendment violation if the denial amounts to deliberate indifference to serious medical needs of the prisoner." *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are two prongs to the deliberate-indifference analysis: an objective prong and a subjective prong. Under the objective prong, a prisoner must show a "serious medical need." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (citation omitted).

Under the subjective prong, a prisoner must show: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096). The state of mind required for deliberate indifference is subjective recklessness; however, the standard is "less stringent in cases involving a prisoner's medical needs . . . because 'the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin*, 974 F.2d at 1060 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact, and

a factfinder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (quotations and citations omitted). Deliberate indifference may also be shown by the way in which prison officials provide medical care, *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988), "by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm," *Lolli v. Cty. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003), or by a purposeful act or failure to respond to a prisoner's pain or possible medical need, even if a prisoner cannot show that his harm was substantial, *Jett*, 439 F.3d at 1096; *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary."). Nevertheless, the deliberate-indifference doctrine is limited; an inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition does not support an Eighth Amendment claim. *Wilhelm*, 680 F.3d at 1122 (citations omitted). Further, a mere difference in medical opinion does not establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

### 1.    Serious Medical Need

The parties do not dispute that Plaintiff had a serious medical need.[3] Nor is there any dispute that Plaintiff's scabies infestations were worthy of treatment. On this record, a jury could find that Plaintiff's condition constituted a serious medical need. *See, e.g.*, *Castillo v. Solano Cty. Jail*, No. 2:08-cv-3080 GEB KJN P., 2011 WL 3584318, at *13 (E.D. Cal. Aug. 12, 2011) (noting "the weight of authority supports a finding that scabies presents a serious medical need"). *But see Allen v. Gaskins*, C/A No. 0:08-1338-SB-PJG,

---

[3] Defendants Glassey and Norton abstractly argue that Plaintiff did not objectively show a serious medical need, (Doc. 32 at 8–9), but Defendants cite to no case law and provide no argument supporting a finding that Plaintiff's scabies infestations did not exhibit a serious medical need.

2010 WL 1010014, at *3 (D.S.C. Feb. 18, 2010) (holding that a plaintiff failed to present "evidence from which a reasonable jury could find that his [scabies infestation] presented a substantial risk to his health or safety" partly because scabies "is a non-life threatening skin condition" with "limited" symptoms). The Court therefore turns to the subjective prong of the deliberate indifference analysis.

### 2.    Deliberate Indifference

#### a.    Ryan

Plaintiff argues that Defendant Ryan, as Director of the Arizona Department of Corrections ("ADOC"), violated his constitutional rights by failing "to ensure that Plaintiff was provided medical care for his serious scabies mite infestation." (Doc. 53 at 7). Defendant Ryan responds that he had no knowledge of Plaintiff's medical needs, and Plaintiff has provided no evidence that Defendant Ryan knew about Plaintiff's medical needs. (Doc. 37 at 7–8). Thus, Defendant Ryan argues that Plaintiff cannot show he acted with deliberate indifference to Plaintiff's medical needs. (*Id.*).

To establish a supervisor's liability, a plaintiff must present facts to indicate that the supervisor defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quotations omitted). A supervising official is liable in his individual capacity if there is a sufficient causal connection between his wrongful conduct and the constitutional violation, which can be established if the official "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (citations omitted).

Here, Plaintiff proffers no facts or evidence to show that Defendant Ryan was personally aware of Plaintiff's medical needs and request to see a dermatologist. Rather,

Plaintiff simply re-alleges his belief that Defendant Ryan had personal knowledge of Plaintiff's scabies infestation and refers to his Medical Grievance Appeal and Defendant Ryan's "acknowledged, uncontested, vast knowledge and many, many years of service in the Arizona prison system" as a basis for such personal knowledge. (Doc. 53 at 7–9). This conclusory statement is insufficient to demonstrate Defendant Ryan's personal knowledge of Plaintiff's medical condition. Further, the "Director's response" to Plaintiff's Medical Grievance Appeal is not signed by Defendant Ryan but, rather, a different ADOC official. (*See* Doc. 38-1 at 26). Without presenting any evidence of Defendant Ryan's personal knowledge, Plaintiff fails to create an issue of fact that Ryan was deliberately indifferent. Thus, summary judgment is appropriate for Defendant Ryan for this cause of action. *See Farmer*, 511 U.S. at 837; *see also Grissom v. Riverside Cty. Jail*, No. ED CV 10-1727 PA (MRW), 2012 WL 5060029, at *4 (C.D. Cal. Aug. 22, 2012) ("Plaintiff's vague and conclusory claim that [the defendant] 'knew' that [the plaintiff] was a snitch is similarly insufficient to create a genuine issue of material fact, as it is not supported by any evidence from which [the plaintiff] can properly demonstrate [the defendant's] knowledge."); *Freemon v. Ryan*, No. CV 09-1717-PHX-JAT (JRI), 2011 WL 5169342, at *22–23 (D. Ariz. Oct. 31, 2011) (reaching the same conclusion).

### b.    Glassey

Plaintiff next alleges that Defendant Glassey was deliberately indifferent to Plaintiff's serious medical needs. (Doc. 11 at 9). Defendant Glassey argues that during her January 26, 2014 medical examination of Plaintiff, she properly treated Plaintiff's "symptoms by prescribing him Triamcinolone cream and Tolnaftanate cream." (Doc. 32 at 7). Plaintiff disagrees with the appropriateness of Defendant Glassey's treatment and believes she should have prescribed a different treatment and/or recommended a dermatological consultation. (Doc. 53 at 11). Thus, Plaintiff argues that Defendant Glassey's "ineffective, deliberately indifferent treatment" resulted in an unnecessary delay before Plaintiff was seen by a dermatologist. (*Id.* at 12).

At best, Plaintiff appears to be arguing a difference of opinion between himself and Defendant Glassey regarding the appropriate medical diagnosis and course of treatment. A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *see also Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Further, with regard to the alleged delay in Plaintiff's dermatologist appointment, "[a] prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." *Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986). Thus, Defendant Glassey's disagreement with Plaintiff regarding a referral to a dermatologist and Defendant Glassey's alleged failure to treat the "cause" of Plaintiff's "itching, rash and lesions," (*see* Doc. 53 at 12), do not rise to the level of a constitutional violation. Finally, to the extent that Plaintiff alleges that he was overexposed to Permethrin cream and attributes his extended exposure to Defendant Glassey, (*see* PSOF at ¶ 11; Doc. 53 at 5), Plaintiff has failed to allege any facts indicating Defendant Glassey participated at all in "forcing" him to keep the cream on past the recommend time.[4]

On this record, the Court finds the absence of a genuine issue of material fact regarding Defendant Glassey's liability for deliberate indifference, and she is entitled to summary judgment.

### c.    Norton

Plaintiff also alleges that Defendant Norton was deliberately indifferent to Plaintiff's serious medical needs. (Doc. 11 at 7).

///

---

[4] Plaintiff only states that unspecified "nursing staff" were responsible for this alleged injury. (PSOF at ¶ 11).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### i.   Response to Inmate Grievance

In his March 17, 2014 Inmate Grievance, Plaintiff asked to "be seen by a licensed dermatologist for a correct diagnosis" and that "medical staff be reprimand[ed]." (Doc. 33-3 at 4). In reviewing Plaintiff's Grievance, Defendant Norton reviewed documentation from 13 CACF medical appointments involving Plaintiff's skin condition. (Doc. 32 at 3–4). Following this review, Defendant Norton concluded that Plaintiff's various complaints were "addressed in a timely manner and all treatments [were] appropriate." (*Id.* at 4). Other than Plaintiff's desire for a referral to a dermatologist, Plaintiff does not allege any specific conduct by medical staff that he expected Defendant Norton to remedy. As discussed previously, Plaintiff's desire to be seen by a dermatologist was a difference of medical opinion, which does not give rise to an inference of deliberate indifference. Thus, there is no inference to be drawn from the evidence that Defendant Norton was intending to inflict purposeful harm in reviewing Plaintiff's March 17, 2014 Inmate Grievance.

### ii.   Delay in Dermatologist Appointment

Plaintiff also argues that "[o]nce consultation with a dermatologist was approved, . . . [Defendant] Norton had the duty and responsibility to ensure his appointment was made and kept in a timely manner." (Doc. 53 at 13). Thus, Plaintiff argues that his nearly six-month wait to see a dermatologist and receive "effective" treatment raises an inference of Defendant Norton's deliberate indifference. (*Id.* at 12–13). Defendant Norton fails to address these allegations in either her Motion or Reply.

A delay in treatment can be construed as deliberate indifference if the delay causes substantial harm. For example, in *Jett v. Penner*, the Ninth Circuit Court of Appeals (the "Ninth Circuit") held that following a referral to a specialist, undue delay—in that case, six months—could raise an inference of deliberate indifference to a serious medical condition. 439 F.3d at 1097–98. Similarly, in *Wilhelm v. Rotman*, the Ninth Circuit held that the plaintiff's yearlong delay in seeing a specialist for a hernia could form the basis of a deliberate indifference claim against the defendant doctor. 680 F.3d at 1123. In so

1  holding, the Ninth Circuit distinguished a doctor's failure to properly request a referral

2  (after concluding that the referral was necessary) from "a mere failure to diagnose or

3  prescribe treatment." *Id.*

4      Here, Defendant Norton does not dispute her personal involvement in the nearly

5  six-month delay of Plaintiff's dermatologist appointment or that her duties as CHC's

6  Health Services Administrator for CACF involve ensuring timely medical treatment for

7  prisoners. Additionally, Defendant Norton fails to provide any justification for the delay

8  in seeing a dermatologist after a referral was made. Thus, as the moving party, Defendant

9  Norton has failed to carry her burden of "'showing'—that is, pointing out to the district

10  court—that there is an absence of evidence to support the nonmoving party's case."

11  *Celotex Corp.*, 477 U.S. at 325. Further, where the movant fails to carry her initial

12  burden, "the nonmoving party has no obligation to produce anything, even if the

13  nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire &*

14  *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

15                  **iii.**    **Causation**

16      Defendant Norton argues that Plaintiff has failed to "produce admissible evidence

17  that the alleged deliberate indifference caused an actual injury." (Doc. 32 at 8).

18  Specifically, Defendant Norton suggests that Plaintiff's failure to produce expert

19  testimony demonstrating that "Defendant [Norton's] conduct caused any actual injury is

20  fatal to [Plaintiff's] case." (*Id.*). Thus, Defendant Norton is arguing that the Court should

21  grant her Motion because Plaintiff failed to produce an expert to opine that the delay in

22  Plaintiff's dermatologist appointment caused Plaintiff harm.

23      Only those acts or omissions amounting to deliberate indifference which *cause*

24  injury to a prisoner's health are actionable under § 1983. *Estelle*, 429 U.S. at 106; *see*

25  *also Hallet*, 296 F.3d at 746 (holding that a prisoner alleging deliberate indifference

26  based on delay in treatment must show that the delay led to further injury). However,

27  where a plaintiff argues that an alleged delay caused harm, courts generally do not

28  require expert testimony to prove causation when other evidence in the record suggests a

causal link between the delay and plaintiff's harm. *Compare Jett*, 439 F.3d at 1098 (holding that various doctors' notes within the record demonstrated that a delay in treatment was harmful), *and Wahl v. Corr. Corp. of Am.*, Civ. No. 1:13-376 WBS, 2015 WL 439720, at *7 (D. Idaho Feb. 2, 2015) (finding that a treating doctor's deposition that the plaintiff would have benefited from seeing an orthopedic specialist earlier could lead a reasonable jury to conclude that the plaintiff suffered harm due to a delay), *with Coreas v. Miller*, 536 Fed. App'x 708, 709 (9th Cir. 2013) ("The district court properly granted summary judgment because [the plaintiff] failed to raise a genuine dispute of material fact as to whether a one-day delay in changing [the plaintiff's] bandages following knee surgery caused him to contract cellulitis or to suffer further injury and undue pain."), *and Lipscomb v. Rynerson*, No. 2:12-cv-1337 GEB DAD P, 2014 WL 496757, at *8–9 (E.D. Cal. Feb. 6, 2014) ("[T]his medical record does not show that the fifteen to twenty minute delay in receiving care about which [the plaintiff] complains caused this alleged harm as is required to defeat defendants' motion for summary judgment.").

Here, following the referral to see a dermatologist but before the dermatologist appointment, Plaintiff continued to receive treatment for scabies by CACF medical staff. (*See* Doc. 54 at 30 (noting treatment occurring in October 2014)). However, as evidenced by Plaintiff's recurring and/or continuing scabies infestation and the dermatologist's notes, the treatment provided by CACF medical staff was not entirely effective. (*See id.* at 31 ("[Plaintiff] has been using clobetasol and triamcinolone topically and doxepin 25mg at night which doesn't help significantly.")). During the nearly six months following the referral to the dermatologist, Plaintiff alleges he suffered "itching, rawness due to scratching, burning and pain." (Doc. 53 at 12). The dermatologist prescribed for Plaintiff a treatment plan that CACF medical staff had not prescribed before, including application of Permethrin cream. (*See* Doc. 54 at 31). Plaintiff acknowledged that this treatment was effective. (Doc. 53 at 12). Thus, a reasonable juror could conclude on this record that Defendant Norton's failure to ensure a dermatologist evaluated Plaintiff in a

timely manner following referral caused Plaintiff to experience pain due to the delay in effective treatment. *See, e.g.*, *McGuckin*, 974 F.2d at 1060 (holding that the infliction of pain can constitute an Eighth Amendment violation even if a delay in treatment does not impact further treatment); *Ross v. Ortiz*, No. EDCV 10-1606-SJO (JPR), 2012 WL 2051083, at *6 (C.D. Cal. Apr. 23, 2012) ("Even though the two-day delay caused by [the defendant] likely did not contribute to any additional damage to [the plaintiff's] wrist, [the defendant's] delay was harmful because it inflicted 'unnecessary and wanton' pain." (citations omitted)).

Thus, summary judgment is inappropriate as to Plaintiff's claim that Defendant Norton was deliberately indifferent to Plaintiff's serious medical needs.

### B.    Eighth Amendment Inadequate Conditions of Confinement

Plaintiff also alleges that Defendants Ryan and Glassey violated his Eighth Amendment right to "humane living conditions." (Doc. 11 at 5, 9). Plaintiff's allegedly inhumane living conditions include a "dormitory with sixty-three other inmates, sixteen of whom complained of itching symptoms." (Doc. 53 at 5).

The Eighth Amendment does not mandate that prisons be free of discomfort. *Hudson*, 503 U.S. at 9. Rather, a prisoner must show that he has been deprived of the "minimal civilized measure of life's necessities, such as food, clothing, shelter, sanitation, medical care, or personal safety." *Farmer*, 511 U.S. at 834 (citations omitted). That is, a plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of harm. *Id.* "The circumstances, nature, and duration of a deprivation of . . . necessities must be considered in determining whether a constitutional violation has occurred." *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).

A plaintiff must also show that a defendant acted with deliberate indifference. Under the standard of deliberate indifference, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take

1   reasonable measures to abate it. *Farmer*, 511 U.S. at 837–45. Mere negligence on the part
2   of the prison official is not sufficient to establish liability, but, rather, the official's
3   conduct must have been wanton. *Id.* at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128
4   (9th Cir. 1998).

5                    **1.      Serious Risk of Harm**

6          Defendants do not dispute that prisoners are at a greater risk of being infested by
7   scabies when placed in crowded conditions alongside scabies-infested prisoners. Thus,
8   Plaintiff has identified a factor responsible for increasing the risk of contracting scabies.
9   *See, e.g.*, *Lua v. Smith*, No. 1:14-cv-00019-LJO-MJS, 2014 WL 1308605, at *2
10  (E.D. Cal. Mar. 31, 2014) (holding that the objective prong of a deliberate indifference
11  claim is satisfied where the plaintiff identified a factor responsible for increasing the risk
12  of contraction or severity of infection). The Court therefore turns to the subjective prong
13  of the deliberate indifference analysis.

14                   **2.      Deliberate Indifference**

15                        **a.      Ryan**

16         Plaintiff argues that Defendant Ryan demonstrated deliberate indifference because
17  he "had sufficient knowledge that an untreated, continued scabies mites infestation, as
18  suffered by Plaintiff[, posed] a 'substantial risk of serious harm' . . ., and [Defendant]
19  Ryan, based upon this knowledge, [drew] 'the inference' serious harm to Plaintiff could
20  occur." (Doc. 53 at 8). Defendant Ryan responds that he lacked necessary knowledge to
21  be deliberately indifferent to Plaintiff's conditions of confinement. (Doc. 37 at 7–8).

22         "Deliberate indifference is a high legal standard." *Toguchi v. Chung*,
23  391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not
24  only 'be aware of facts from which the inference could be drawn that a substantial risk of
25  serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting
26  *Farmer*, 511 U.S. at 837). "If a [prison official] should have been aware of the risk, but
27  was not, then the [official] has not violated the Eighth Amendment, no matter how severe
28  the risk." *Id.* (quoting *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1188

- 14 -

(9th Cir. 2002)).

Plaintiff has failed to demonstrate that Defendant Ryan acted with deliberate indifference. Although Plaintiff claims that Defendant Ryan knew of "the scabies mite infestation endemic to [CACF] and the contagious nature of such parasites," the only evidence Plaintiff cites for this proposition is Defendant Ryan's "surrogates, communications," and Plaintiff's Medical Grievance Appeal. (Doc. 53 at 8). As noted above, the Medical Grievance Appeal is insufficient to constitute personal knowledge in this case. Additionally, Plaintiff does not provide any evidence elaborating on any knowledge gained by Defendant Ryan from unspecified "surrogates" or "communications." Plaintiff's allegations are merely conclusory and insufficient to show Defendant Ryan acted with deliberate indifference.

Accordingly, the Court finds there exists no genuine issue of material fact whether Defendant Ryan acted with deliberate indifference to the allegedly inadequate conditions of confinement at CACF. The Court grants Defendant Ryan's Motion on this claim.

### b.      Glassey

Although Plaintiff alleges in his complaint that Defendant Glassey violated his Eighth Amendment right to "humane living conditions," (Doc. 11 at 9), he fails to specify any underlying conduct by Defendant Glassey that was deliberately indifferent to Plaintiff's conditions of confinement. When a prisoner attempts to hold a prison employee responsible for deliberate indifference, the prisoner must establish individual fault. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). Sweeping conclusory allegations are insufficient to prevent summary judgment. *Id.* "The prisoner must set forth specific facts as to each individual defendant's deliberate indifference." *Id.* Plaintiff has failed to introduce any evidence tending to show how Defendant Glassey was deliberately indifferent to his conditions of confinement. As a result, Defendant Glassey is entitled to summary judgment on this claim.

### C.      Punitive Damages

Because the Court has granted summary judgment as to all claims against

Defendants Ryan and Glassey, the Court will address punitive damages only as to Defendant Norton. Citing only to Arizona state legal precedent, Defendant Norton argues that Plaintiff has not met his burden to be awarded punitive damages. (Doc. 32 at 9). Thus, Defendant Norton argues that she is entitled to summary judgment on punitive damages.

Federal law governs the entitlement to, and the standards for, § 1983 punitive damages awards because state substantive law does not eclipse the Supremacy Clause. *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17 (1991); *Cornwell v. Riverside*, 896 F.2d 398, 399–400 (9th Cir. 1990). A jury may assess punitive damages in a § 1983 action when the defendant's conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Deliberate indifference and recklessness are similar standards. *See Farmer*, 511 U.S. at 836 ("[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.").

As explained above, there are genuine issues of material fact regarding Defendant Norton's liability for a constitutional violation. If a jury concludes that she acted with callous or reckless indifference to Plaintiff's Eighth Amendment rights, it may assess punitive damages. *See Wade*, 461 U.S. at 48, 54 ("Punitive damages are awarded in the jury's discretion," and may be awarded based on "recklessness [or] serious indifference to or disregard for the rights of others."); *see also Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). Thus, Defendant Norton is not entitled to summary judgment as to Plaintiff's claim for punitive damages.

///

///

///

///

///

- 16 -

IV.     **CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to the pending motions for summary judgment. (Docs. 32, 37).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Request to Defendants Norton, Glassey, [and] Ryan['s] Response Dated August 18, 2016, and Ryan's Dated August 22, 2016 to Plaintiff's Response Dated August 9, 2016 (Doc. 63) is **DENIED** as moot.

**IT IS FURTHER ORDERED**[5] that Defendants Norton and Glassey's Motion for Summary Judgment (Doc. 32) is **GRANTED** in part and **DENIED** in part, consistent with the reasoning above. Defendant Glassey is entitled to summary judgment on Count V, which is the only remaining claim against Defendant Glassey. Summary judgment for Defendant Norton is denied on Count III, which is the only remaining claim against Defendant Norton.

**IT IS FURTHER ORDERED** that Defendant Ryan's Motion for Summary Judgment (Doc. 37) is **GRANTED**. Defendant Ryan is entitled to summary judgment on Count I, which is the only remaining claim against Defendant Ryan.

Dated this 12th day of December, 2016.

James A. Teilborg
Senior United States District Judge

---

[5] The Court notes that it has previously dismissed the following counts of Plaintiff's First Amended Complaint: Count II against the GEO Group, Inc., (*see* Doc. 12); Count IV against Dr. Muhammed A. Haleem, (*see* Doc. 12); Count VI against Dr. John T. O'Steen, (*see* Doc. 52); Count VII against CHC, (*see* Doc. 12); and Count VIII against Dr. William Crane, (*see* Doc. 52).